THE HEALTH LAW FIRM

2800 Cantrell Road, Suite 200
Little Rock, Arkansas 72202

Harold H. Simpson                 hhsimpson@healthlawfirm.com              Internet: www.healthlawfirm.com
Seth Ward III                     sward@healthlawfirm.com                  Telephone: (501) 221-7100
Karey W. Gardner                  kwgardner@healthlawfirm.com              Telefax: (501) 224-8787
Gabriel D. Mallard                gdmallard@healthlawfirm.com

October 30, 2009

Mr. Jack Davis
ADR, Inc.
1501 N. University Avenue, Suite 420
Little Rock, AR  72207

Re:   Request for Arbitration: Arkansas Methodist Hospital Corporation d/b/a
      Arkansas Methodist Medical Center v. Adel Hassan, M.D.

Dear Mr. Davis:

This firm represents Arkansas Methodist Hospital Corporation d/b/a Arkansas
Methodist Medical Center ("Medical Center") as a party to a "Physician Income
Guarantee Agreement" ("Agreement") with Adel Hassan, M.D. ("Dr. Hassan").  A
copy of the Agreement is attached for your reference.  In compliance with
Section 5.19 of Agreement and on behalf of Medical Center, we hereby request
binding arbitration of the Medical Center's claim that Dr. Hassan has breached
the Agreement by his failure to engage in continuous, active, full-time practice
of medicine as required by Section 3.1 of Agreement and Dr. Hassan's
subsequent failure to repay the amount due immediately pursuant to Section
4.5 of Agreement.

The Medical Center's claim is for one hundred eleven thousand one hundred
forty-three dollars and twenty one cents ($111,143.21) plus simple interest
accruing per annum at a rate of six and one-quarter percent (6.25%).

Dr. Hassan is represented by Mr. Joe Holifield of Paragould, Arkansas.  Mr.
Holifield's contact information is as follows:

      Joe Holifield, Attorney at Law
      429 West Court Street
      Paragould, Arkansas  72450
      (870) 239-9578

EXHIBIT
A



Mr. Jack Davis
October 30, 2009
Page 2

---

This will not be a high-low arbitration. The arbitration provision of Agreement provides the arbitration be conducted by ADR, Inc. by a single arbitrator in Little Rock, Arkansas.

Should you have any questions, please feel free to contact me at the address or telephone number as listed on the letterhead. Additionally, I can be reached via e-mail at the following address: *hhsimpson@healthlawfirm.com*.

I look forward to hearing from you in this matter.

Very truly yours,

THE HEALTH LAW FIRM

Harold H. Simpson

HHS/BKH
enclosure

cc:   Joe Holifield

## PHYSICIAN INCOME GUARANTEE AGREEMENT

THIS AGREEMENT is made and entered into as of this 18th day of December 2006, by and between Arkansas Methodist Hospital Corporation d/b/a Arkansas Methodist Medical Center ("Medical Center") and Dr. Adel Hassan, M.D., ("Physician").

### RECITALS

1.1   Medical Center is a nonprofit corporation organized and operated under the laws of Arkansas.

1.2   Medical Center's mission includes providing quality patient care services to Paragould, Arkansas and the surrounding area.

1.3   In furtherance of Medical Center's mission, Medical Center has the responsibility not only to maintain the quality and functioning of its hospital facility, but also to organize a quality Medical Staff through which Medical Center discharges it's administrative and quality control functions.

1.4   Additionally in furtherance of Medical Center's mission, Medical Center has the responsibility to improve community health services generally, including those external to Medical Center's own facility.

1.5   Medical Center has attempted to fulfill these responsibilities by working to meet perceived patient needs, particularly those related to expanding the quantity, quality and choice of physician skills available in Medical Center's potential patient care community.

1.6   Medical Center has documented a general community need for an additional physician to practice in the community in the medical specialty of General Surgery.

1.7   Physician, who is now or will become qualified to practice medicine in the State of Arkansas, wishes to establish a medical practice in the specialty of General Surgery in Paragould, Arkansas and apply for active appointment to Medical Center's Medical Staff.

1.8   Physician and Medical Center have determined that it will take at least One (1) year(s) to establish a new practice in the medical specialty of General Surgery in the community.

1.9   Medical Center has determined that the only way that Physician would relocate to Paragould, Arkansas would be if Medical Center were to

provide the financial assistance as provided in this Agreement, and that Medical Center has determined and concluded that the assistance provided is reasonable and appropriate, and that the benefits to the communities to be served by Physician are significantly greater than the cost of this assistance.

1.10    Physician does not presently serve patients in the geographic area served by Medical Center.

1.11    Both Medical Center and Physician, as parties to this Agreement, wish to establish a relationship, as hereinafter described, in order to increase the availability and quality of patient care services in the community, and to define their respective rights and responsibilities each to the other.

NOW THEREFORE, in consideration of the foregoing recitals and the mutual promises and covenants hereinafter contained, the parties agree as follows:

## INCOME SUBSIDY PROVISIONS

2.1    Net Income Subsidy.   Because of a need to provide quality health care to the community, establish a practice in Physician's specialty area, and other benefits to Medical Center of Physician establishing his General Surgery practice in Paragould, Arkansas, Medical Center agrees to subsidize Physician's Net Practice Income, payable as provided in Section 2.3 and subject to repayment under Sections 2.3, 2.7, and 2.8 herein. For purposes of this Agreement:

2.1.1    Subsidy Period means the first twelve ( 12) months following the date Physician begins full-time practice, as specified in Section 3.1 of this Agreement.

2.1.2    Gross Collections shall include all monies collected by Physician for professional fees in office or hospital practice and any other income from Physician's practice of medicine, including, but not limited to, any income stemming from Physician's intellectual property rights if such rights are related to Physician's practice of medicine.

2.1.3    Net Practice Income.

2.1.3.1    Net Practice Income during the Subsidy Period shall be equal to Gross Collections less Professional Expenses, as defined in and limited by Sections 2.1.4, 2.1.5, 2.1.6, and 2.2 of this Agreement, necessary to conduct the practice of medicine.  Except as

provided herein to the contrary, Net Practice Income shall be determined on a cash basis.

2.1.3.2   Net Practice Income during each of the three months following the Subsidy Period shall equal Gross Collections less 1/12 of the Professional Expenses allowed by Medical Center during the Subsidy Period (up to a maximum of Fifteen Thousand dollars ($15,000.00 ) per month. *See* **Appendix A** (incorporated herein by reference), Footnote 5.

2.1.4   Professional Expenses allowable under this Agreement shall be limited to an aggregate of One Hundred Eighty Thousand dollars ($180,000.00) during the term hereof. *See* **Appendix A**, Footnotes 1 and 4. Further, Professional Expenses shall be subject to the approval of Medical Center as to the reasonableness of such Professional Expenses and, without limiting the foregoing, as provided in **Sections 2.2 and 2.3.2**. Further, Professional Expenses shall be  limited to the following: *and disability MH BD*

2.1.4.1   Professional liability insurance coverage during the Subsidy Period.

2.1.4.2   Monthly payments for lease of office.

2.1.4.3   Premises and property insurance for the Subsidy Period, amortized monthly.

2.1.4.4   Utilities (gas, electricity, water, sewer, garbage, and telephone).

2.1.4.5   A computer and software for office use, including third party billing by electronic transmission for Medicare, Medicaid and Blue Cross claims, which shall be purchased (and depreciated using the ten (10) year straight line method) or leased.

2.1.4.6   Reasonable salary, payroll taxes, health insurance, workers' compensation insurance, and unemployment insurance for office and support personnel.

2.1.4.7   Licensure fees related to Physician's practice of medicine under this Agreement.

2.1.4.8   Membership dues associated with Physician's membership in the Paragould Chamber of Commerce.

    2.1.4.9  Expenses associated with Physician's memberships in North East Arkansas Regional Physician Association (NARPA) and Partners in Regional Innovative Service Medicine, Inc. (PRISM).

    2.1.4.10  Medical supplies.

    2.1.4.11  Office supplies.

    2.1.4.12  Postage.

    2.1.4.13  Housekeeping and maintenance expenses related to Physician's medical office.

2.1.5    When items of Professional Expenses are required to be amortized, only the monthly amortized amount may be treated as a Professional Expense for that month.

2.1.6    Excluded from Professional Expenses are the following:

    2.1.6.1  Any and all payments to Physician, directly or indirectly, including all contributions to retirement or deferred compensation plans on behalf of Physician and federal, state and local income taxes on all compensation paid to Physician.

    2.1.6.2  Any payments for health and life insurance for Physician except for payments for group health insurance, group term life insurance, or group disability insurance that are made to provide a regular benefit to all office and support personnel.

    2.1.6.3  Subject to **Sections 2.1.4.8** and **2.1.4.9**, any expenditures related to motor vehicles, country or service club membership dues, meals or other expenses, and personal travel and entertainment.

2.2    **Budget and Projected Expenses.** Prior to the commencement of this Agreement, Physician shall meet with Medical Center representatives and submit to Medical Center a list of projected Professional Expenses as well as projected annual and monthly budgets. Medical Center shall notify Physician of any items or expenses that it believes to be unreasonable.

2.3    **Payment of Net Income Subsidy.**

    2.3.1  Medical Center shall provide funds ("Net Income Subsidy Payments")

to Physician each month during the Subsidy Period that are equal to the amount necessary to fund the deficit between Physician's monthly Net Practice Income for each month during the Subsidy Period and Thirty Thousand dollars ($ 30,000.00).

2.3.2   For the purpose of determining monthly Net Income Subsidy Payments from Medical Center (or repayment due from Physician) under this **Section 2.3**, Physician shall:

2.3.2.1   Submit a monthly report prepared by a certified public accountant that shall show the profit or loss of Physician's practice and shall include the following data for the month: number of office visits, number of Medical Center visits, gross billings, gross collections, professional expenses, net practice income, and advance requested or repayment due. If such report is not received for any month, no Net Income Subsidy payment shall be made until the report is received by Medical Center. In the event Physician submits expenses that Medical Center disallows, Physician shall have thirty (30) days to produce additional documentation for such expenses. In the event Physician does not submit additional documentation within thirty (30) days, the expenses shall be permanently disallowed. In the event, after presentation of documentation, Medical Center continues to disallow the expenses and Physician continues to claim the expenses the disagreement shall be decided by referring the matter in question to an independent auditor chosen by Medical Center. Medical Center shall pay for such audit. The independent auditor's decision shall be final with regard to monthly Professional Expenses.

2.3.2.2   Disclose in writing whether any claimed Professional Expense is the result of any transaction between Physician and any other individual in a position to refer patients to Medical Center. Before any expense resulting from any such transaction is allowed by Medical Center as a Professional Expense, Physician shall provide Medical Center sufficient evidence to determine that the transaction complies with the relevant "safe harbors" to the Federal Antikickback law, and the relevant "exceptions" to the Stark Law. Such determination shall be at Medical Center's sole discretion. If Medical Center determines that any such transaction does not comply with the relevant "safe harbor" or "exception", then any expense resulting from such transaction shall be disallowed.

2.3.3   Should Physician's Net Practice Income for any month during the Subsidy Period (as defined by Section 2.1.3.1) exceed Thirty Thousand dollars ($30,000.00 ), no Net Income Subsidy Payment is due Physician for that month, and Physician shall remit all such Net Practice Income in excess of Thirty Thousand dollars ($30,000.00) per month to Medical Center until all previous Net Income   Subsidy Payments advanced pursuant to Section 2.3 and

Relocation Costs advanced pursuant to Section 2.5 have been repaid Medical Center. Such repayments are due within fifteen (15) days of the end of such month. *See* Appendix A, Footnote 3.

2.3.4   Should Physician's Net Practice Income for any of the three months following the Subsidy Period (as defined by Section 2.1.3.2) exceed Thirty Thousand dollars ($ 30,000.00), Physician shall remit all such Net Practice Income in excess of Thirty Thousand dollars ($ 30,000.00) per month to Medical Center until all previous Net Income Subsidy Payments advanced pursuant to Section 2.3 and Relocation Costs advanced pursuant to Section 2.5 have been repaid Medical Center. Such repayments are due within fifteen (15) days of the end of such month. *See* Appendix A, Footnote 5.

2.4   **Final Accounting.** Within one-hundred twenty (120) days after the end of the Subsidy Period, Physician shall submit a statement of Net Practice Income for the Subsidy Period. Such statement shall be prepared by a certified public accountant and shall provide reasonable detail of Gross Collections and Professional Expenses and a computation of the Subsidy Balance, as defined in Section 2.7.1.

2.5   **Relocation Costs.** Medical Center agrees to reimburse Physician the reasonable costs of moving normal and usual household items to Paragould, Arkansas not to exceed an aggregate amount of Fifteen Thousand dollars ($15,000.00). Medical Center shall reimburse Physician for these costs after receipt of proper documentation. Relocation costs do not include loss or costs associated with the sale or purchase of a home, office, or practice.

2.6   **Equipment.**

2.6.1   **Furnishings and Equipment.** Medical Center agrees to furnish Physician's office with new office furniture and medical equipment mutually agreed to be necessary for the operation of a medical practice. Medical Center agrees to furnish the necessary furniture and equipment for a total expense not to exceed Twenty Five

Thousand dollars ($25,000.00) for the term of this Agreement. All purchases must receive prior written approval Medical Center. Such furniture and equipment expenses shall not be considered "Professional Expenses" as defined in Section 2.1.4 of this Agreement and shall not be utilized in calculating Physician's Net Income Subsidy pursuant to Section 2.3. Medical Center shall have the final and exclusive decision concerning the purchase of all furnishings and equipment.

2.6.2   **Purchase of Furnishings and Equipment.** Physician shall purchase any new furnishings and equipment from Medical Center at the conclusion of the Subsidy Period.

2.6.2.1   The purchase price for said furnishings and equipment shall be the original purchase price of said furnishings and equipment or actual cost to the Medical Center, whichever is less.

2.6.2.2   Physician's payment obligation under this Section 2.6.2 shall be accomplished by Physician's payment to Medical Center of twenty four (24) monthly installments, with each such monthly installment being 1/24 of the purchase price described in Section 2.6.2.1, plus accrued interest. Interest shall accrue at six and one-quarter percent (6.25 %) per annum until all sums owed Medical Center under this Section 2.6.2 have been repaid in full.

2.6.2.3   Physician's first payment under this Section 2.6.2 shall be due on the first day of the first calendar month following the Subsidy Period. Each subsequent payment shall be due on the first day of each month until all sums owed Medical Center under this Section 2.6.2 have been repaid in full.

2.6.2.4   Upon Medical Center's request, Physician shall execute a promissory note for the amount, including interest (as specified in Section 2.6.2.2), specified in Section 2.6.2.1.

2.6.2.5   Medical Center shall retain full ownership of said furnishings and equipment until Physician has repaid all sums owed to Medical Center under this Section 2.6.2.

2.7   Repayment and Satisfaction.

2.7.1   Physician shall be obligated to repay Medical Center all Net Income

Subsidy Payments advanced pursuant to Section 2.3 and Relocation Costs advanced pursuant to Section 2.5 that have not been previously repaid, the total of which shall be the "Subsidy Balance". At the end of the Subsidy Period, the Subsidy Balance shall be immediately due and payable and the entire indebtedness shall thereafter bear interest at the rate of six and one-quarter percent (6.25%) per annum until paid. *See* Appendix A, Footnote 6(a).

2.7.2   Except as provided in **Sections 2.8** and **4.5**, Physician may elect to satisfy Physician's repayment obligations under this Agreement (not including the payment obligation referenced in **Section 2.6**) as follows (*See* **Appendix A**, Footnote 6(b):

2.7.2.1   On the second_ anniversary of the date Physician begins full time practice as specified in **Section 3.1**, if Physician has continuously and actively practiced medicine in Paragould, Arkansas and has complied with all obligations under this Agreement, Physician's indebtedness to Medical Center will be reduced in an amount equal to one-third (1/3) of principal, plus all unpaid interest accrued to date;

2.7.2.2   On the third_ anniversary of the date Physician begins full time practice as specified in **Section 3.1**, if Physician has continuously and actively practiced medicine in Paragould, Arkansas and has complied with all obligations under this Agreement, Physician's indebtedness to Medical Center will be reduced in an amount equal to an additional one-third (1/3) of principal, plus all unpaid interest accrued to date;

2.7.2.3   On the fourth anniversary of the date Physician begins full time practice as specified in **Section 3.1**, if Physician has continuously and actively practiced medicine in Paragould, Arkansas and has complied with all obligations under this Agreement, Physician's remaining indebtedness to Medical Center under this Agreement shall be completely forgiven.

2.7.3   If Physician elects to satisfy Physician's repayment obligations under **Section 2.7.2**, the due date of the Subsidy Balance as provided in **Section 2.7.1** shall be postponed as long as Physician complies with all obligations under this Agreement and continues to engage in the continuous, active, full-time practice of medicine as defined in **Section 3.1**. However, if Physician makes such election and then ceases at any time the continuous and active,

full-time practice of medicine as defined in **Section 3.1**, any Subsidy Balance that has not been previously repaid or satisfied under this **Section 2.7** shall be immediately due and payable and the entire indebtedness shall thereafter bear interest at the rate of six and one-quarter percent (6.25%) per annum until paid.

2.7.4   Nothing in this Agreement or in this Section shall be construed to entitle Physician to receive any payments from Medical Center after the end of the Subsidy Period.

2.8   **Acceleration.** In the event of Physician's default in the payment of any installment (including any installment due under **Section 2.6.2**), or any part thereof, when payment becomes due, or upon Physician's failure to perform or comply with any of the terms of this Agreement, Medical Center may declare the entire indebtedness (including all funds advanced by Medical Center pursuant to Sections 2.3, 2.5, and 2.6.2) to be immediately due and payable and the entire indebtedness shall thereafter bear interest at the rate of six and one-quarter percent (6.25%) per annum until paid. Notice of the exercising of such option is hereby waived and no delay in the exercise of such option shall be construed as a waiver of such right; and such option may be exercised at any subsequent time during default.

## RESPONSIBILITIES OF PHYSICIAN

3.1   **Full Time Practice.** Physician agrees to engage in, on or before January 2, 2007, and continuously thereafter, a full time practice in the specialty of General Surgery in Paragould, Arkansas. Full time practice is defined as the personal provision by Physician of clinical medical services in the community for a minimum of forty (40) hours per week for a minimum of forty-eight (48) weeks per year. Physician further agrees to maintain reasonable office hours so Physician will be able to pursue and develop a practice. This will be applicable for the subsidy period only.

3.2   **Physician Services to Community.** Physician shall provide services to Paragould, Arkansas and surrounding communities and to patients at Medical Center. Physician shall skillfully apply Physician's specialized art both as it is now generally known and practiced and as it shall or may develop and expand in the future.

3.3   **Compliance with Ethical Requirements and Laws and Regulations.** Physician shall at all times comply with the requirements of the Code of Ethics of the American Medical Association and all applicable federal,

state, and local laws, rules, and regulations.

3.4 **License.** Physician shall at all times maintain an unrestricted license to practice medicine in the State of Arkansas.

3.5 **Medical Center Privileges.** Physician agrees to meet and maintain the requirements for the granting of active staff privileges at Medical Center during the term of this Agreement. Physician agrees to fulfill the obligations attendant to such privileges, as defined in the Bylaws, Rules, and Procedures of Medical Center's Medical Staff. Physician shall apply for membership in North East Arkansas Regional Physician Association (NARPA) and Partners in Regional Innovative Service Medicine, Inc. (PRISM) during the first ninety (90) days of the term of this Agreement.

3.6 **On-Call Coverage.** Physician shall participate in Medical Center's call schedule as required by Hospital's Medical Staff Bylaws and Rules and Regulations, as both may be amended from time to time.

3.7 **Committee Service.** Physician shall participate in Medical Staff committees, shall serve in such offices to which Physician may be elected or appointed, and shall carry out the responsibilities of Medical Staff membership as specified in the Bylaws and Rules of Medical Center's Medical Staff, as both may be amended from time to time.

3.8 **Quality Assurance Activities.** Physician shall participate in Medical Center's quality assurance program and peer review program.

3.9 **Continuing Medical Education.** Physician shall participate in programs of education for the professional staff of Medical Center on subjects related to <u>General Surgery</u> and arrange for and participate in programs of education for other hospitals, public and private agencies and organizations for the purpose of familiarizing them with the programs of Medical Center.

3.10 **Professional Participation.** Physician shall participate in professional organizations and programs to develop support for Medical Center and to enable Medical Center to continue to attract qualified medical and support staff.

3.11 **Medicare, Medicaid and Charity Care.** Physician agrees to serve Medicare and Medicaid patients and to provide a reasonable amount of charity care to patients both in Physician's office and in Medical Center. Further, Physician agrees to accept Medicare assignment.

3.12   **Collection of Professional Fees.** Physician agrees to use a computer to bill Medicare, Medicaid and Blue Cross claims by way of electronic transmission and to bill all claims for professional services rendered within a two-week period after such services are rendered. Also, Physician agrees to make reasonable collection efforts. Physician also agrees to abide by Medical Center's Medical Staff Bylaws with regard to timely completion of medical records in order to facilitate quality patient care and timely billing.

3.13   **Professional Liability Insurance.** Physician agrees to acquire and maintain such professional liability insurance as is required by Medical Center's Medical Staff Bylaws, Rules, and Policies as each may be amended from time to time. If "claims made" insurance coverage is provided, Physician agrees to acquire and maintain reasonably acceptable "tail" coverage upon the termination of this Agreement. Physician shall provide certificates of such insurance to Medical Center upon demand and shall give Medical Center at least fifteen (15) days' notice of the cancellation or non-renewal of such insurance.

3.14   **Access to Financial Records.** Physician agrees to keep and maintain accounting records reflecting all fees billed for professional services, professional expenses paid, and collections received from all sources of income in connection with Physician's practice of medicine. Physician further agrees to make available for Medical Center's inspection and audit Physician's records concerning billings and the amount of fees collected from such billing and provide all financial information concerning Physician's medical office practice related in any way to determination of any payments made to Physician under this Agreement. Physician agrees to allow a designated agent or employee of Medical Center to inspect such records during normal business hours upon forty eight (48) hours advance notice and shall be for a period of fifteen (15) months. Additionally, Physician agrees that, until the expiration of four (4) years after the furnishing of services under this Agreement, Physician shall, upon appropriate written request, make available to the Secretary of the Department of Health and Human Services, the Secretary's authorized representative, the Comptroller General of the United States, or the Comptroller General's authorized representative, this Agreement and such books, documents, and records that are necessary to clarify the nature and extent of the subsidy under this Agreement. The availability of Physician's books, documents, and records shall be subject at all times to such criteria and procedures for seeking or obtaining access as may be promulgated by the Secretary of Health and Human Services in regulations and as set forth in other applicable laws. Physician's disclosure under this **Section 3.14** shall not be construed as waiver of

any other legal rights to which Physician may be entitled under the law or regulations.

3.15   **Federal Eligibility.**  Physician represents and warrants that Physician is neither now listed by a federal agency as excluded, disbarred, suspended, or otherwise ineligible to participate in federal programs, including Medicare or Medicaid, nor does Physician have any reason to believe that during the term of this Agreement will Physician be so listed on the General Service Administration List of Parties Excluded from Federal Procurement and Non-Procurement Programs.

3.16   **Disclaimer Regarding Admissions.**  While Medical Center hopes to serve the needs of Physician's patients, under no circumstances is Physician obligated to admit patients to Medical Center.  Further, under no circumstances is Physician restricted from obtaining staff membership and clinical privileges at other hospitals in the community or from referring Physician's patients to such other hospitals.  The parties acknowledge that none of the payments to be made by Medical Center to Physician hereunder are conditioned on any requirement that Physician make referrals to, be in a position to make or influence referrals to, or otherwise generate business for Medical Center.  In determining the subsidy amounts under this Agreement, the start-up costs of establishing a practice in the region were taken into account.  The subsidy amounts were established without, in any way, taking into account or predicating upon the volume or value of any referrals generated between the parties.

3.17   **Covenant Not to Disclose Confidential Information.**  Physician acknowledges and stipulates that: (i) during the term of this Agreement, Physician will be placed in a position by Medical Center to become acquainted with various aspects of Confidential Information (as defined below); (ii) the use or disclosure of Confidential Information by Physician except as expressly authorized by Medical Center is prohibited and would seriously damage Medical Center; and (iii) in addition to being given access to Confidential Information, Physician will receive material benefits as a result of this Agreement, including financial support and experience.  Therefore, Physician agrees as follows:

3.17.1   During the term of this Agreement and thereafter, Physician shall not, without the prior written consent of Medical Center, directly or indirectly:

3.17.1.1   divulge, furnish, or make accessible to any person or use in any manner any of the Confidential Information;

3.17.1.2 take any action that might reasonably or foresee ably be expected to compromise the confidentiality or proprietary nature of any of the Confidential Information; or

3.17.1.3 fail to follow the reasonable suggestions made by Medical Center from time to time regarding the confidentiality and proprietary nature of the Confidential Information.

3.17.2 "Confidential Information" means all of the materials, information and ideas of Medical Center, including, without limitation: the terms of this Agreement, patient names, patient lists, patient records, patient information, operation methods and information, accounting and financial information, marketing and pricing information and materials, internal publications and memoranda, information relating to officers, directors or employees, and other matters considered confidential by Medical Center.

3.17.3 Medical Center agrees that Physician may disclose the terms of this Agreement without Hospital's prior written consent only as follows:

3.17.3.1 As necessary to communicate with any attorney or advisor who is assisting Physician with this Agreement.

3.17.3.2 As necessary in the course of preparing and filing tax returns or other required filings.

3.17.3.3 With respect to any legal proceedings based upon the enforcement of this Agreement.

3.17.3.4 Pursuant to court order after reasonable notice to the other party.

3.17.3.5 As required by governmental authorities.

3.18 **Practice Limitation.**

3.18.1 In consideration of the support extended to Physician by Medical Center and the community in establishing Physician's practice, Physician agrees that, for a period of five years following the date Physician begins practice in Paragould, Arkansas, Physician shall not practice in or from an office located outside Paragould, Arkansas, and within fifty (50) miles of Paragould, Arkansas

without the prior written approval of Medical Center.

3.18.2    During the term of this Agreement and for so long as Physician is financially obligated to Medical Center under the terms of this Agreement, Physician shall not be employed by or become a member/owner of a medical practice owned, controlled by, or in a joint venture with a competitor of Medical Center. Determination of whether an entity is a "competitor" shall be made at Medical Center's sole discretion.

3.19    **Other Arrangements.** During the subsidy period of this Agreement, Physician shall not:

3.19.1    Enter into any other agreement that attempts to modify the terms of this Agreement. Physician agrees that during the term of this Agreement, any other agreement he or she enters into relating to financial assistance for the establishment of his or her medical practice shall be secondary to this Agreement, and in the event of a conflict between this Agreement and any other agreement, Physician will at all times be bound by the terms and conditions contained in this Agreement.

3.19.2    Subject to Section 3.18 of this Agreement, execute or be bound by any covenant not to compete or any other covenant that restricts Physician's practice in any way that conflicts with the terms and conditions of this Agreement.

3.19.3    Enter into any agreement whereby Physician receives financial assistance in connection with the relocation of his or her practice in order to become a member of the medical staff of any other hospital or health care facility.

3.19.4    Enter into any other agreement relating to Physician's practice that contains terms counterproductive to, or in any way in conflict with, the terms and conditions of this Agreement.

## TERM AND TERMINATION

4.1   **Term of Agreement.** The term of this Agreement shall begin on the date first above written and shall continue for forty-eight (48) months, beginning on the date Physician begins full time practice as defined in **Section 3.1** herein, unless Physician elects to satisfy Physician's repayment obligations under **Section 2.7.2**, in which case the term of this Agreement shall continue until the date Physician's indebtedness to Medical Center on the Subsidy Balance is satisfied in full.

4.2   **Termination of Agreement by Medical Center.** This Agreement may be terminated by Medical Center upon the occurrence of any of the following events:

4.2.1   Death or disability of Physician. "Disability" means that Physician is unable to practice medicine or any other profession or to engage in any other income generating activity.

4.2.2   A material breach of this Agreement by Physician, including without limitation, Physician's failure to engage in the continuous, active, full-time practice of medicine as defined in **Section 3.1**, during the term of this Agreement.

4.2.3   Failure of Physician to continuously meet the requirements for Medical Staff appointment and clinical privileges at Medical Center or failure of Physician to be approved and appointed to the Medical Staff of Medical Center and granted clinical privileges in accordance with its Bylaws.

4.2.4   Failure to obtain, loss, or suspension of Physician's permanent unrestricted license to practice medicine in Arkansas, DEA number, Medicare certification, or Medicaid certification.

4.2.5   Dismissal of Physician from said Medical Staff for cause.

4.2.6   Any attempt by Physician to assign any of Physician's rights or delegate any of Physician's duties under this Agreement.

4.2.7   Failure of physician to maintain residence in Greene County and full-time medical practice in General Surgery in Paragould, Arkansas for a period of one (1) year.

4.2.8   Failure of Physician to maintain membership in North East Arkansas Regional Physician Association (NARPA) and Partners in

Regional Innovative Service Medicine, Inc. (PRISM) throughout the term of this Agreement.

4.2.9    The loss by Medical Center of its license to operate as a hospital.

4.2.10   Closure or dissolution of Medical Center, but not the merger or acquisition thereof by or with another healthcare organization.

4.2.11   Upon the issuance of a determination by any state or federal regulatory authority that this Agreement violates a state or federal law, rule or regulation.

4.3   **Termination by Physician.** Physician may terminate this Agreement upon the occurrence of any of the following circumstances:

4.3.1    The failure of Medical Center to make any payment to Physician due under this Agreement.

4.3.2    A material breach of this Agreement by Medical Center that is not corrected by Medical Center within thirty (30) days following written notice from Physician.

4.3.3    Death or disability of Physician. "Disability" means that Physician is unable to practice medicine or any other profession or to engage in any other income generating activity.

4.4   **Termination by Medical Center or Physician.** This Agreement may be terminated by either party prior to Physician permanently relocating and taking residence in Paragould, Arkansas by the immediate payment of a twenty-five thousand dollar ($25,000) termination fee to the other party.

4.5   **Effect of Termination.** In the event of termination of this Agreement pursuant to any section other than **Section 4.4**, all Net Income Subsidy Payments advanced pursuant to **Section 2.3**, all Relocation Costs advanced pursuant to **Section 2.5** (and any interest due pursuant to **Section 2.7** upon all Net Income Subsidy Payments advanced pursuant to **Section 2.3** and all Relocation Costs advanced pursuant to **Section 2.5**), and all money advanced by Medical Center pursuant to **Section 2.6.2** (including interest) that has not been previously repaid or satisfied, shall be repaid by Physician and shall become due and payable immediately and the entire indebtedness shall thereafter bear interest at the rate of six and one-quarter percent (6.25%) per annum until paid.

## GENERAL PROVISIONS

5.1   Independent Contractor. In performing services in the medical practice herein described, Physician shall be engaged in the independent practice of medicine as a physician and shall not provide such services on behalf of or at the direction and control of Medical Center. Medical Center and Physician agree that neither Physician nor any of Physician's staff are employees of Medical Center. Nothing contained in this Agreement shall be construed to create a partnership or a joint venture between Medical Center and Physician, nor to authorize either Medical Center or Physician to act as a general or special agent of the other party in any respect, except as specifically set forth in this Agreement. It is expressly agreed that, except with respect to obligations specifically set forth in this Agreement or in Medical Center's Medical Staff Bylaws or Rules, Medical Center shall neither have nor exercise any control over the professional medical judgment or method used by Physician in the performance of services hereunder. However, Physician agrees that in addition to observing the foregoing requirements, Physician shall at all times perform Physician's duties and functions in a competent and professional manner.

Physician acknowledges that Medical Center shall not pay or withhold on behalf of Physician any sums for income tax, unemployment insurance, social security, worker's compensation or other requirement of any law, or make available to Physician any of the benefits established for employees of Medical Center, such as vacation, sick leave with pay, paid days off, life, accident and health insurance, or severance pay upon termination. Any and all such payments and withholdings are the sole responsibility of Physician. Physician shall indemnify and hold Medical Center harmless from any and all loss or liability arising with respect to such payments or withholdings. In the event the United States Internal Revenue Service ("IRS") should question the independent contractor status of Physician or of any of Physician's employees, both Physician and Medical Center shall have the right to participate in any discussions with the IRS, irrespective of who initiates those discussions, and each shall notify the other, in advance, of any planned meeting or discussion.

5.2   Acknowledgment of Reasonableness. Physician has carefully read and considered the provisions of this Agreement and agrees that the restrictions set forth herein, particularly those in Sections 3.1, 3.17, 318 and 3.19, are fair and reasonably required for the protection of Medical Center.

5.3   Notices. Any notices, requests and other communications hereunder shall be in writing and shall be deemed given if hand delivered or mailed

first class, postage prepaid, certified mail, return receipt requested, addressed as follows, or to such other address as may be designated in writing:

If to Medical Center:    Administrator
Arkansas Methodist Medical Center
900 West Kingshighway
P.O. Box 339
Paragould, AR 72450

If to Physician:    Adel Hassan, M.D.
1000 West Kingshighway, Suite 13
Paragould, AR 72450

5.4    **Remedies.** The remedies available under this Agreement are cumulative. Either party may, at its sole discretion, elect to pursue all or any of such remedies. Such remedies are in addition to any given by law or equity and may be enforced successively or concurrently.

5.5    **Interpretation.** This Agreement shall be governed, interpreted, and enforced according to the laws of Arkansas. Should any provision of this Agreement require judicial interpretation, it is agreed that the court interpreting or construing the same shall not apply a presumption that the terms hereof shall be more strictly construed against one party by reason of the rule of construction that a document is to be construed more strictly against the party who itself or through its agent prepared the same, it being agreed that the agents of both parties have participated in the preparation of this Agreement.

Any past or future course of dealing between the parties, or any of them, or custom or usage of trade shall not be considered for any purpose including, but not limited to, supplementing, creating, defining, or interpreting any right, obligation, or duty of any party hereto. It is further agreed that all terms of this Agreement shall be interpreted according to their usual or customary meaning unless expressly defined by the terms of this Agreement. No evidence shall be admitted into any arbitration or court proceeding involving this Agreement of any course of dealing between the parties, past or future, or oral agreements or understandings as to the meaning of the terms hereof. All rights, liabilities, or obligations of the parties hereto shall be determined solely upon the basis of the language of this Agreement. It is further agreed that all terms of this **Section 5.5** are material to the agreement of the parties and are a material part of the consideration for the agreement of

the parties and their respective obligations and undertakings hereunder.

5.6 **Headings.** The headings are inserted in this Agreement for convenience only and in no way define, limit, or describe the scope, or intent, or interpretation of this Agreement.

5.7 **Section Numbers.** Any reference to any section number in this Agreement shall be deemed to reference all subsections of such section number. For example, a reference to **Section 2.3** would also include **Sections 2.3.1, 2.3.2, 2.3.2.1, 2.3.2.2, 2.3.3, and 2.3.4.**

5.8 **Gender and Number.** Words of any gender used in this Agreement shall be deemed to include any other gender, and words in the singular number shall be deemed to include the plural, unless the context otherwise requires.

5.9 **Entire Agreement.** This Agreement contains the entire agreement of both parties hereto, and no other oral or written agreement shall be binding on the parties. This Agreement supersedes all other agreements, contracts and understandings, whether written or otherwise, between the parties relating to the subject matter of this Agreement.

5.10 **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

5.11 **Amendment.** Any amendment to this Agreement shall be in writing and signed by both parties.

5.12 **No Waiver.** No delay or failure by either party to exercise any right under this Agreement shall constitute a waiver of that or any other right or obligation hereunder.

5.13 **Binding Effect.** This Agreement shall be binding upon and shall inure to the benefit of Physician, Medical Center, and Medical Center's successors and assigns.

5.14 **No Assignment.** Physician acknowledges that the services to be rendered by Physician are unique and personal. Accordingly, Physician may not assign any of Physician's rights or delegate any of Physician's duties or obligations under this Agreement. Any assignment, attempted assignment, transfer, or pledge of this Agreement or of Physician's interest herein shall be null and void, and at the option of Medical Center, this Agreement may be immediately terminated.

5.15 **Severability.** Each section of this Agreement is severable from all other sections. In the event any court of competent jurisdiction determines that any section or subsection is invalid or unenforceable for any reason, all remaining sections and subsections shall remain in full force and effect.

5.16 **Survival.** The covenants and obligations of Physician herein which by their terms require performance after the expiration of the terms of this Agreement, including without limitation those set forth in **Sections 2.3,4, 2.4, 2.6, 2.7, 2.8, 3.12, 3.13, 3.14, 3.17, 3.18, 4.5, 5.16, 5.17 and 5.18** shall survive the term of this Agreement and shall be binding and enforceable until fully satisfied in accordance with the term of this Agreement.

5.17 **Venue and Jurisdiction.** In accepting the terms of this Agreement Physician and Medical Center expressly agree that any legal or equitable action that may be brought regarding this Agreement shall be brought in either the United States District Court for the Eastern District of Arkansas, Jonesboro Division, or any circuit court of Greene County, Arkansas.

5.18 **Third Party Beneficiaries.** This Agreement is entered into for the sole benefit of the parties to the Agreement. Nothing contained herein or in the parties' course of dealing shall be construed as conferring any third party beneficiary status on any person or entity not a party to this Agreement.

5.19 **Arbitration.** Except as provided in Sections 2.3, any controversy or claim arising out of this Agreement, or the breach thereof, shall be settled by binding arbitration to be administered by ADR, Inc., 500 President Clinton Avenue, Museum Center, Suite 10, Little Rock, AR 72201, under its Commercial Arbitration Rules and in accordance with Ark. Code Ann. § 16-108-101, et seq. The arbitration shall be conducted by a single arbitrator in Little Rock, Arkansas. In addition to any other appropriate damages, the prevailing party in the arbitration shall be entitled to reasonable attorneys' fees and other fees, costs, and expenses of the arbitration. Any judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

5.20 **Physician's Warranties and Representations.** Physician represents and warrants that he has been represented by separate counsel and financial advisors of his choice and that Physician is not relying upon

any statement or representation of Hospital or its representatives, oral or written, as to any matter relating to the subject matter hereof, including, but not limited to, projected income or expenses of Physician's practice. Physician represents and warrants that he has independently investigated all matters pertaining to the subject matter hereof that he and his advisors have determined to be relevant to Physician's decision to enter into this Agreement, and Physician has determined, of his own free will and after due consideration, to so enter into this Agreement. Physician represents and warrants that the execution and delivery of this Agreement, and the carrying out and consummation of the provisions of this Agreement, shall not conflict with or constitute a breach or default under any applicable law or administrative regulation of Arkansas or the United States or any other instrument to which Physician is a party or otherwise subject.

5.21   **Disclaimer Regarding Admissions.** While Hospital hopes to serve the needs of Physician's patients, under no circumstances is the Physician obligated to admit patients to Hospital. Further, under no circumstances is Physician restricted from obtaining staff membership and clinical privileges at other hospitals, or from referring Physician's patients to such other hospitals. The parties acknowledge that none of the payments to be made by Hospital to Physician hereunder are conditioned on any requirement that Physician make referrals to, be in a position to make or influence referrals to, or otherwise generate business for Hospital. The amount of payments made under this agreement was established without, in any way, taking into account or predicating upon the volume or value of any referrals generated between the parties.

IN WITNESS WHEREOF, Medical Center and Physician have executed this Agreement at Paragould, Arkansas as of the date first above written.

MEDICAL CENTER

By: _Ronald K. Rooney, President_
(name and title)

_Ronald K. Rooney_
(signature)

Date: _12/19/06_

PHYSICIAN

_(signature)_

Date: _12/15/06_

REVISED PHYSICIAN CONTRACT HASSAN 12/11/06